Ctt

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**Plaintiff(s)**

BarbAra COE

**V.**

**Case No.**

08C 3654

**FILED**

**Defendant(s)**

Local I union SEIU &
American premier Security

**AMENDED COMPLAINT**

JUL 2 1 2008 TC
JuL 21 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

I BarbAra COE File a Complaint on June 26, 2008
against Local I union SEIU & American Premier, Security
because their failure to meet the Collective bargaining
agreement in the Contract. NOT taking COE to the first step
of this agreement, which Would be to investigate the reason
for this discharge or to be able to Protest according to
The BOMA 2007 agreement article 3 section 1 had limitation
 Never was informed of the times frame had limitation
until this time had expired. Was given
information about the grievance after the fact,
meaning they said Nothing could be done because my
time had run out. So they (Local Iunion) was allowing
the case Withthout any Thing being done on my.
behalf. Never received any phone calls or letters doing
Their Period to tell me what I Needed to do, I was under
The impression this is what I paid my union dues
for Situation as this, American premier never came to
me with any information at all for start to finish
Promise To mail me the Written notices of action
That Written up on me, but Never Received. SEIU, Local I
ATTached to this is the BOMA Chicago
2007 Security Agreement.
                                  Barbara COE

# BOMA/CHICAGO – SEIU, LOCAL 1 2007 SECURITY AGREEMENT

## April 30, 2007 through April 27, 2008

### Table of Contents

| ARTICLES | PAGE | |
|---|---|---|
| I | 2 | Recognition |
| II | 2 | Employer Rights, Union Membership and Checkoff |
| III | 4 | Discharge and Discipline |
| IV | 4 | Wages |
| V | 5 | Workweek-Overtime |
| VI | 5 | Holidays |
| VII | 7 | Vacations |
| VIII | 8 | Termination-Vacation Accrual-Final Paycheck |
| IX | 8 | Funeral Leave |
| X | 9 | Working Conditions |
| XI | 10 | Veterans' Rights |
| XII | 10 | Health and Welfare Funds |
| XIII | 11 | Pension Funds |
| XIV | 13 | Health and Welfare- Pension Delinquencies |
| XV | 14 | Seniority |
| XVI | 15 | Leaves of Absence |
| XVII | 15 | Strikes, Lockouts, Picketing |
| XVIII | 16 | Grievance Procedure and Arbitration |
| XIX | 17 | Union Activities in Buildings |
| XX | 18 | Election to Adopt or Withdraw from Contract |
| XXI | 18 | Jury Service |
| XXII | 18 | Miscellaneous Provisions |
| XXIII | 19 | Subcontracting |
| XXIV | 20 | "Most Favored Nations" Clause |
| XXV | 20 | Education and Training |
| XXVI | 21 | Duration |

**SCHEDULES**

| "A" | 22 | Member Signatory Buildings |

**SIDE LETTERS**

*BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY*

## AGREEMENT

## BUILDING OWNERS AND MANAGERS ASSOCIATION OF CHICAGO

### AND

## SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1

### SECURITY EMPLOYEES

*April 30, 2007 through April 27, 2008*

THIS AGREEMENT, entered into by the BUILDING OWNERS AND MANAGERS ASSOCIATION OF CHICAGO (hereafter designated as the "Association") on behalf of such of its member buildings as are listed in Schedule "A" attached hereto, and SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1, SEIU (hereafter designated as the "Union") covers wages, hours and working conditions for security employees who are now or may hereafter be represented by said Union (hereafter designated as "employees") and who are now or may hereafter be employed by such members of the Association as now are or who may hereafter become parties hereto (hereafter designated as "Employers").

## ARTICLE I - RECOGNITION

The Employers recognize the Union as the sole and exclusive representative of all non-supervisory full and part-time security employees, including elevator operators, starters and assistant starters employed by them in the buildings which are now or may hereafter be covered by this Agreement, but excluding highly compensated loss prevention, detection and investigative employees and security personnel employed by building tenants or by contractors engaged by tenants. Employers and employees shall not bargain independently of the Union with respect to wages, hours of employment or working conditions as provided in this Agreement; the right to bargain on behalf of all such employees is vested solely in the Union. Bargaining unit work consists of all security-related functions performed within and about the building including, but not limited to operating and monitoring security and safety equipment, monitoring and controlling ingress and egress, operating passenger and freight elevators (except temporary construction elevators situated outside the building and those elevators in the building not previously operated by bargaining unit personnel which are designated by the Employer for a sustained period as dedicated, full-time, construction elevators for use exclusively in connection with major construction projects) to transport and facilitate ingress and egress of persons, equipment and/or material of any kind to and from the floors or levels of the building, and elevator starter functions.

## ARTICLE II - EMPLOYER RIGHTS, UNION MEMBERSHIP AND CHECKOFF

Section 1.     Subject to the provisions of this Agreement, the Employer shall have the exclusive right to direct the employees covered by this Agreement. Among the exclusive rights of management, but not intended as a wholly inclusive list of them are: the right to plan, direct,

## BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY

and control all operations performed in the building, to direct the working force, to transfer, hire, demote, promote, discipline, suspend or discharge, for proper cause, to subcontract work and to relieve employees from duty because of lack of work or for any other legitimate reason. The Union further understands and agrees that the Employer provides an important service to its tenants of a personalized nature to fulfill their security needs, as those needs are perceived by the Employer and the tenants. Accordingly, this Agreement shall be implemented and interpreted by the parties so as to give consideration to the needs and preferences of the tenants.

Section 2.    On or after the thirty-first day following the beginning of employment, or the effective date of this Agreement, or the execution date of this Agreement, whichever is later, every employee subject to the terms of this Agreement shall, as a condition of employment, become and remain a member of the Union paying the periodic dues and initiation fees uniformly required, or, in the alternative, shall, as a condition of employment, pay a fee in the amount of periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership, or, if the employee objects to, the payment of that fee, such employee shall as a condition of employment pay that portion of the fee related to representative costs.

Section 3.    The Employer agrees to deduct in the first pay period of each month, from the pay of every employee who has executed and caused to be delivered to the Employer a written assignment, the regular monthly dues and the initiation fee of the Union, if due and owing, in accordance with the Constitution and Bylaws of the Union as certified to the Employer by the Union. Where the employee, who is on checkoff, has insufficient earnings during the first pay period of the month, the deductions shall be made by the Employer from the next wage payment in accordance with billings furnished by the Union.

The Employer agrees that such deductions shall constitute Trust Funds and will be forwarded by the Employer to the Union within ten (10) days after such deduction is made. Any employer who, without a bona fide reason, intentionally fails to remit such deductions within thirty (30) days on two (2) occasions within any twelve (12) month period shall, in the event of any such subsequent failure, be required to pay in addition to the delinquent amount, interest at the rate of two percent (2%) per month thereon, and liquidated damages at the rate of five percent (5%) per month thereon, as well as all costs incurred by the Union in recovering such delinquent amounts, including attorney and auditor fees and court costs.

The Union agrees to indemnify and save the Employer harmless from any liability incurred by reason of such deductions.

Section 4.    The Employer shall discharge an employee for non-payment of Union initiation fees or dues within ten (10) days after the Employer's receipt of written notice from the Union that such employee is not in good standing. Said notice shall state that the employee has previously been given fifteen (15) days' written notice: (a) of the delinquency; (b) the amount and method of computation thereof; (c) that the employee is not in good standing with respect to the payment of Union initiation fees or dues; and (d) that discharge will result at the end of said fifteen (15) day period unless all arrears are paid. The Union will indemnify, defend and hold the Employer harmless against all liability, damages, claims and costs incurred by the Employer, including but not limited to court costs, judgments and attorney fees and expenses, by reason of the Employer's compliance with this Section. The Union reserves the right, at its option and at its own expense, to appear and defend all such claims whenever suit is brought against the

### BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY

Employer. Employee protests of discharge for alleged non-payment of Union initiation fees or dues will not be subject to the grievance procedure or arbitration.

## ARTICLE III - DISCHARGE AND DISCIPLINE

Section 1.    The right to discipline and discharge for cause shall be vested solely in the Employer but, except for probationary employees, the Union shall have the right to investigate the reasons therefore and to process grievances protesting such action through the grievance procedure.

In addition to those circumstances mentioned elsewhere in this Agreement, just cause circumstances for discharge shall include; but not be limited to: unlawful use or unlawful possession of controlled substances, intoxication, insubordination, theft, excessive absenteeism, gross negligence, failure to comply with reasonable rules, policies or directives promulgated by the Employer and clearly communicated to the employee, use of unnecessary force or disrespectful treatment of a tenant, visitor or employee and inability or unwillingness to be trained to fulfill existing or modified security needs of the Employer, the building owner or its tenants. The Union further understands and agrees that the Employer provides an important service to its tenants of a personalized nature to fulfill their security needs, as those needs are perceived by the Employer, the building owner and the tenants. Accordingly, the provisions of this Section shall be implemented and interpreted by the parties and by an arbitrator in arbitration proceedings so as to give significant consideration to such needs.

Section 2.    Except for discharge for the reasons specifically enumerated in Section 1 of this Article, the Employer shall give to the employee and the Union written notice of the reason therefor, 10 days prior to the effective date of the discharge, or 10 days pay, in addition to all other benefits which the employee has accrued to date of discharge. The day on which the notice is given shall be excluded from the 10 day period. The employee may resign by giving the Employer the same notice. In the event of such a discharge for which no prior notice is required, the Employer shall promptly furnish the Union written notice of the reason for such discharge.

## ARTICLE IV - WAGES

Section 1.    Effective April 30, 2007, employees hired prior to April 30, 2003 shall receive an increase in pay of not less than twenty-five cents ($0.25) per hour or a minimum wage rate of not less than $11.15 per hour, whichever is greater.

Section 2.    Security employees hired on or after April 30, 2003 shall receive not less than the following minimum wage rates depending upon the length of their continuous employment by the Employer:

Starting rate - $9.15
After six (6) months of continuous service - $9.40
After one (1) year of continuous service - $9.95
After two (2) years of continuous service - $10.50
After three (3) years of continuous service - $10.85
After four (4) years of continuous service - $11.15

## BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY

Section 3.    The foregoing are minimum hourly rates of pay and nothing herein shall be deemed to prevent or restrict the Employer from paying employees higher hourly rates than those set forth in Section 1 and 2 above.

Section 4.    Employees shall be paid at their job location not less often than every two weeks.

Section 5.    Any regular full-time employee who is called in to work on a scheduled day off shall be given at least four (4) hours of work. Employees who are required by the Employer (or pursuant to subpoena) to make court appearances as a result of circumstances arising out of the course of their employment with the Employer shall be paid for the time spent in court and in the event that such appearance occurs on a day when the employee is not scheduled to work, the employee shall receive not less than four (4) hours pay.

## ARTICLE V - WORKWEEK-OVERTIME

Section 1.    The work week shall consist of seven (7) consecutive days. This Section shall not be construed as a guarantee of any number of days work per week or hours work per day. An employee will be granted a minimum of one (1) day off in each work week.

Work schedules for part-time security employees shall be established by the Employer in accordance with its operating needs.

Section 2.    All work performed in excess of 40 hours in one workweek shall constitute overtime and shall be paid for at the rate of time and one-half the employee's hourly rate. The Employer guarantees the foregoing hours of work to those full time security employees who were employed as such by the Employer as of the effective date of this Agreement who are scheduled to work in a workweek and who are ready, willing and able to work such hours; provided, however, that employers maintaining regular workweeks for full-time security employees of less than 40 hours as of the effective date of this Agreement may continue to maintain such work weeks. If any security employee is required to work beyond his regularly scheduled hours in any day, such employee shall be paid therefore and shall not be required to take compensatory time off.

Section 3.    Each full-time employee shall be entitled to 20 minutes of paid non-working time per day which shall be taken in two rest periods; provided, that if the Employer has previously specified relief time in excess of that provided herein, such additional relief time shall continue to be provided to security employees who were employed by the Employer as of October 15, 1984 and who were, as of that date, receiving such additional specified relief time. Employers who comply with this provision shall be deemed to have complied with and satisfied the provisions of Illinois law as set forth in 820 ILCS 140/3.

## ARTICLE VI - HOLIDAYS

Section 1.    The following days, or the days on which they are legally observed, shall be observed as holidays for all regular security employees who have completed their probationary periods:

*BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY*

New Year's Day
Dr. Martin Luther King Day (or a personal holiday, whichever is agreed to by the Employer and the employee)
Memorial Day
Fourth of July
Labor Day
Thanksgiving Day
Christmas Day
Employee's Birthday (for employees with one or more years of service)
Either Christmas or New Year's Eve, or one-half day on both, whichever is designated by the Employer.

In addition, following completion of their probationary periods, regular security employees covered by this Agreement shall receive three (3) personal holidays during each anniversary year of their employment on days mutually acceptable to them and their employers. The Employer will agree to make "acceptable" not less than one day in every consecutive four month period provided that the Employer shall not be required to grant any employee more than a total of three (3) personal holidays in any employment anniversary year.

If an eligible employee's birthday holiday falls on one of the other holidays observed in this Agreement, the employee shall be paid for both holidays. If an eligible employee's birthday falls on February 29, he or she shall be regarded as having a birth date of February 28th.

Section 2.    Each regular employee shall be credited with the normal numbers of hours at straight time in his or her shift on each of such holidays and, in the case of those holidays which fall on what would have been an employee's regular workday, such time shall be credited as time worked in computing overtime.

When a holiday falls on a regular employee's day off, he or she shall be credited with eight (8) hours at straight time (four (4) hours in the case of one-half day holidays) provided that regular employees who regularly work less than forty (40) hours per week, shall be paid for the aforesaid holidays on a pro-rata basis, that is the percentage which such employee's hours each week represent to a 40 (forty) hour week multiplied times eight (8) hours or four (4) hours, whichever is applicable.

Regular employees required to work on holidays, including the birthday holiday, shall be paid extra for such hours worked at one and one-half times their regular hourly rate, in addition to the holiday pay.

Section 3.    In order to qualify for holiday pay, employees must work their last regularly scheduled shifts before the holiday and their next regularly scheduled shifts following the holiday; provided, that employees who are absent on one or both of such days due to approved vacation shall be entitled to holiday pay, and provided, further, that employees who are absent on one or both of such days due to FMLA leave, or medical leave or personal leave previously approved by the Employer shall be entitled to receive holiday pay only upon their return to active employment within ninety (90) calendar days following the beginning of their absence.

## BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY

**Section 4.**    In the event that there is one date provided for under Illinois law with respect to a holiday called for in this Agreement and another date provided for by Federal law, the date established by Federal law shall be observed, provided that a building as a unit may choose to observe the Illinois date to accommodate the needs of tenants.

**Section 5.**    Employees scheduled to work on a holiday who do not report for work and fail to call in prior to their starting time shall not be eligible to receive holiday pay. Any employee who takes an extra day off in connection with the holidays provided for in this Article for unjustified reasons shall be subject to progressive discipline by the Employer.

**Section 6.**    Employees must provide the Employer with the date of their birthday at least two (2) weeks in advance in order to receive holiday pay and/or time off for that date. If employees fail to provide such advance notice, the Employer may require them to celebrate their birthday holidays on alternative dates or receive pay in lieu of their birthday holidays.

## ARTICLE VII - VACATIONS

**Section 1.**    Regular employees who have been in the service of any building continuously for:

One year, shall be given an annual vacation of one week with pay;
Two years; shall be given an annual vacation of two weeks with pay;
Six years, shall be given an annual vacation of two weeks and one day with pay;
Seven years, shall be given an annual vacation of two weeks and two days with pay;
Eight years, shall be given an annual vacation of two weeks and three days with pay,
Nine years, shall be given an annual vacation of two weeks and four days with pay;
Ten years, shall be given an annual vacation of three weeks with pay;
Eighteen years, shall be given an annual vacation of four weeks with pay;
Twenty-five years, shall be given an annual vacation of five weeks with pay.

**Section 2.**    An additional day's vacation (or 1/2 day in the case of one-half day holidays) shall be allowed an employee whose vacation period included one of the holidays listed in this Agreement:

**Section 3.**    Service shall be deemed continuous notwithstanding leaves of absence for sickness, maternity or other reasons agreed to by the Employer.

**Section 4.**    A week's vacation shall be computed upon the employee's regularly scheduled weekly hours of work for the fifty-two (52) weeks preceding his or her vacation. If an employee has worked less than fifty-two (52) weeks, such vacation shall be based upon the scheduled hours during the total number of weeks the employee has worked.

**Section 5.**    Vacation accrual shall be given to a regular employee so long as such employee is carried on the payroll of the Employer (even though no compensation is paid). No vacation accrual is to be credited to the temporary, extra or substitute employee. Vacation accrual for such temporary, extra or substitute employee begins only at such time as the regular employee is dropped from the payroll. An employee who is absent for 180 days or more shall not be eligible for paid vacation until he or she has returned to active employment for at least ninety (90) days, unless the employee is permanently disabled.

*BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY*

Section 6.    Vacation rights of employees shall not be affected by a change of ownership or management of the building so long as they remain in the employ of the new owners or managers. Any employee employed by a contractor whose employment is terminated by reason of a change of contractors during the employee's first year of employment in a building and who is retained in the same building by the new contractor shall, upon completion of his or her full first year of employment in the building, be entitled to a full vacation with pay from the new contractor, less any vacation pay which may have been received by the employee from the displaced contractor.

Section 7.    Vacations shall be scheduled at times that are mutually acceptable to the Employer and the employee.

Section 8.    Vacation checks shall be paid to the employee no later than the last scheduled day of work before the beginning of the employee's scheduled vacation.

Section 9.    Each regular employee shall be credited with the normal number of hours at straight time in his or her shift on each of such vacation days and in the case of those vacation days which fall on what would have been the employee's regular workday, such time shall be credited as time worked in computing overtime.

Employees required to work on scheduled vacation day(s) shall be paid for hours worked on such day(s) at one and one-half times their regular hourly rate in addition to vacation pay; provided, however, that the foregoing shall not apply if the Employer and employee agree to reschedule the previously scheduled vacation day(s).

## ARTICLE VIII - TERMINATION-VACATION ACCRUAL-FINAL PAYCHECK

Section 1.    Any employee who has been in the service of an Employer for more than one year and whose employment is terminated for any reason, shall be compensated on a pro rata basis, taking into account the employee's accrued vacation, if any, and the period worked since the first or anniversary date of employment compared with the vacation to which the employee would be entitled if the employee worked the entire year.

Section 2.    Any employee shall receive his or her final paycheck in full at the time of separation, if possible, but in any case within five (5) days or at the next regular payday, whichever comes first.

## ARTICLE IX - FUNERAL LEAVE

Each employer agrees to pay employees covered by this Agreement for necessary absence on account of death in the immediate family, up to and including a maximum of three scheduled workdays at straight time, provided the employee attends the funeral.

The term "immediate family" shall mean: spouse, parent, child, brother, sister, father-in-law, mother-in-law, grandparent, grandchild or any relative residing with the employee or with whom the employee is residing. In the event the employee is unable to attend the funeral, the employee shall be allowed one day at straight time. One day's pay at straight time shall be given on account of death of an employee's brother-in-law, sister-in-law, daughter-in-law or son-in-law.

*BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY*

## ARTICLE X - WORKING CONDITIONS

Section 1.    Security employees shall be provided with a clean, sanitary locker area and lockers, with washing facilities, soap and towels. Each building shall provide and maintain an adequate first aid kit in the office of the building or at some other central location.

Section 2.    The employer shall not require medical approval because of short term illness or disability up to and including three (3) working days unless the employee has had two (2) or more short term illness or disability absences in the preceding six (6) months without medical approval from the employee's physician.

Section 3.    Employees shall be paid at the straight time rate for all training required by the Employer or mandated by law or policy of State, County, municipality or Federal government. The cost of tuition, licenses, registrations and renewals required for employment duties by Employer or governmental body shall be paid by the Employer. Any work (including mandatory training hours) if over 40 hours in a week shall be paid at time-and-one-half.

Section 4.    For the purpose of preventing loss or negligent damage, the Employer may deduct an amount up to fifty dollars ($50.00) from the wages of new employees and withhold same as a security deposit on uniforms, apparel and equipment issued by the Employer for the exclusive use of the employee, provided that the new employee is informed of such deduction at the time of hire. Such deposit (or appropriate portion thereof) shall be returned to the employee upon termination of employment provided that such uniforms, apparel and equipment are returned in reasonable condition (reasonable wear and tear excepted).

Section 5.    The Employer shall have the right, at its discretion, to require employment applicants to undergo tests to determine the presence, in their systems, of unlawful narcotics, controlled substances and drugs, alcohol or other intoxicants or hallucinogens, as a condition of employment by the employer and to refuse to employ any person who refuses to undergo such tests and/or whose test results are positive. In the case of a change of Employers, the new Employer shall have the right, at its discretion, to require existing employees within the building to undergo such tests as a condition of employment and to refuse employment to any individual who refuses to undergo such tests and/or whose test results are positive.

The Employer shall also have the right to require any employee to undergo random drug and/or alcohol testing in the field or at a qualified laboratory whenever the Employer, in its sole discretion, believes either that the employee may have ingested unlawful narcotics, controlled substances or drugs or that the employee's job performance has been or is likely to be affected by consumption of alcohol, and to discharge, for cause, any employee who refuses to undergo such tests or whose test results reveal the presence of (i) any quantity of any unlawful substance, or (ii) a quantity of alcohol which could impair the employee's work performance or adversely affect his or her reflexes. Positive field tests must be verified by follow-up tests conducted by a qualified laboratory before the employee may be disciplined. Blood tests may only be performed by a qualified laboratory. If subjected to urine testing the employee shall be allowed to void the urine in private without any person observing said act.

At the employee's request, specimens identified as positive shall be retested using the Gas Chromatography/Mass Spectrometry (GCMS) test. Such initial cutoff levels when screening specimens shall be those contained in the Scientific and Technical Guidelines for Federal Drug

## BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY

Testing Programs. It is agreed that, if such second test is negative, the Employer shall reimburse the employee for the cost of said test.

Section 6.    Employees shall be allowed a one-half (1/2) day Wellness Visit off with pay each year for the purpose of undergoing a complete medical examination at the Clinic operated by Union Heath Service. The employee shall be paid, on a straight time basis, for this Wellness Visit half-day only if the employee actually uses the half-day for the specified purpose and presents proof thereof to the Employer. The complete medical examination shall include, at a minimum:

1.   A consultation with a physician;
2.   A comprehensive examination;
3.   Complete blood counts;
4.   Chemistries;
5.   Electrocardiogram;
6.   Chest X-ray;
7.   Urinalysis.

A ten (10) day advance notice for the Wellness Visit must be submitted by the employee and accepted by the Employer.

## ARTICLE XI - VETERANS' RIGHTS

The reemployment rights of employees who are now or may later be in military service and the duties of employers in relation to them, shall be governed by the applicable provisions of Federal and State laws.

## ARTICLE XII - HEALTH AND WELFARE FUNDS

Section 1.    For the period April 30, 2007 through June 30, 2007, Employers shall contribute $377.85 (three hundred seventy-seven dollars and eighty-five cents) each month on behalf of each regular full-time employee covered by this Agreement who is on its active payroll to the Local 25 SEIU Welfare Fund; provided, however, that Employers' contributions shall be prorated for those months in which such regular full-time employees begin working, cease their employment and/or remain on medical or personal leaves of absence for periods in excess of those specified in Article XVI, Section 1 and Section 5 of this Article, respectively. For purposes of the foregoing, a "regular full-time employee" shall be defined as one who is normally scheduled to work 120 (one-hundred-twenty) or more hours within a calendar month. In the case of employees other than regular full-time employees, Employers shall contribute $2.18 (two dollars and eighteen cents) for each pay hour of work performed by such employee.

Section 2.    Effective July 1, 2007 and for the remaining duration of this Agreement, Employers shall contribute $386.52 (three hundred eighty-six dollars and fifty-two cents) each month on behalf of each regular full time employee covered by this Agreement who is on its active payroll to the Local 25 SEIU Welfare Fund; provided, however, that Employers' contributions shall be prorated for those months in which employees begin working, cease their employment and/or remain on medical or personal leaves of absence for periods in excess of those specified in Article XVI, Section 1 and Section 5 of this Article, respectively. For purposes of the foregoing, a "regular full-time employee" shall be defined as one who is normally

10

## BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY

scheduled to work 120 (one-hundred-twenty) or more hours within a calendar month. In the case of employees other than regular full-time employees, Employers shall contribute $2.23 (two dollars and twenty-three cents) for each pay hour of work performed by such employee.

Section 3.    Paid vacations, holidays and funeral leave shall be treated as time worked. In the event an employee works during his or her holiday or vacation, one payment to the Welfare Fund is all that will be required.

Section 4.    The Employer adopts the provisions of and agrees to comply with and be bound by the Trust Agreement establishing the Local 25 SEIU Welfare Fund and all amendments thereto, and also hereby irrevocably designates as its representatives the Trustees named as Employer Trustees in said Agreement, together with their successors selected in the manner therein provided, and further ratifies and approves all matters heretofore done in connection with the creation and administration of said Trust and all actions to be taken by such Trustees within the scope of their authority.

Section 5.    Welfare Fund payments shall be continued on eligible employees when said employees are on a medical leave of absence up to the periods provided for in Article XVI, Section 1 or beyond that period for special reasons agreed to by the Employer and the Union. Welfare Fund payments shall be continued on eligible employees when said employees are on a personal leave of absence up to a period of ninety (90) days, or beyond that period for special reasons agreed to by the Employer and the Union. Beyond that time, the Welfare Fund payment shall be made for and on behalf of the temporary, extra or substitute employee, but in no event shall contributions be made for both the eligible employee and the temporary, extra or substitute employee; provided, however, that any temporary employee who has been employed by the Employer for more than twelve (12) consecutive months shall have contributions made on his/her behalf.

Section 6.    The Employer shall make remittances to the Welfare Fund within fifteen (15) calendar days after the close of the first payroll period ending on or after the first day of each calendar month.

Section 7.    With each report to the Welfare Fund, the Employer shall give the names, Social Security numbers and starting dates of new, regular employees and termination dates of regular employees.

Section 8.    Payments to the Welfare Fund shall be made on the pre-listed remittance forms sent by the Fund Office, or reproduced records which give all of the required information in a form acceptable to the Fund. Failure to submit the required information in a form acceptable to the Fund will be subject to the arbitration provisions of Article XVIII.

## ARTICLE XIII - PENSION FUNDS

Section 1.    There are in existence two pension funds, one known as the Local 25 SEIU and Participating Employers Pension Trust (herein called the "Local 25 Pension Trust") and the other known as the SEIU National Industry Pension Fund (herein called the "National Pension Fund"). Employers shall contribute on behalf of an individual employee to only one fund. Employees hired on or after the effective date of this Agreement shall have their contributions made to the Local 25 SEIU and Participating Employer's Pension Trust.

## BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY

Section 2.   Effective April 30, 2007 Employers shall contribute to the Local 25 SEIU Participating Employers Pension Trust at the rate of $26.00 per week for each employee for whom contributions have in the past been made to such Trust, and who is regularly scheduled to work thirty (30) or more hours per week and who actually works at least 50% of the employee's scheduled workweek. In the event such employee does not work at least 50% of the employee's scheduled workweek, the Employer shall make contributions at the rate of $0.65 (sixty-five cents) per hour for all hours actually worked. For employees not meeting the aforesaid conditions, contributions shall be made at the rate of $0.65 (sixty-five cents) per hour worked for employees who actually worked less than 30 hours per week. Paid holidays, paid vacations and funeral absence (up to three working days) are deemed time worked for pension contribution purposes. The Union and the Employer shall endeavor to have the Trustees of the Pension Fund arrange to have the employee's last employer notified when an employee makes application for a pension. In the event an employee works during his or her holiday or vacation, one payment to the Pension Fund is all that will be required.

Section 3.   During the term of this Agreement, Employers shall contribute to the National Pension Fund at the rate of $14.00 per week for each employee for whom contributions have in the past been made to such Fund, and who is regularly scheduled to work thirty (30) or more hours per week and who actually works at least 50% of the employee's scheduled workweek. In the event such employee does not work at least 50% of the employee's scheduled workweek, the Employer shall make contributions at the rate of $0.35 (thirty-five cents) per hour for all hours actually worked. For employees not meeting the aforesaid conditions, contributions shall be made at the rate of $0.35 (thirty-five cents) per hour worked for employees who actually worked less than thirty (30) hours per week. Paid holidays, paid vacations and funeral absence (up to three working days) are deemed time worked for pension contribution purposes. The Union and the Employer shall endeavor to have the Trustees of the Pension Fund arrange to have the employee's last employer notified when an employee makes application for a pension. In the event an employee works during his or her holiday or vacation, one payment to the Pension Fund is all that will be required.

Section 4.   The employer adopts the provisions of and agrees to comply with and be bound by the Trust Agreement establishing said Local 25 Pension Trust and the National Pension Fund and all amendments thereto, and hereby irrevocably designates as its representatives the Trustees named as Employer Trustees in said Agreement, together with their successors selected in the manner therein provided, and further ratifies and approves all matters heretofore done in connection with the creation and administration of said Trusts and all actions to be taken by such Trustees within the scope of their authority, including the authority of the Trustees to restrict the benefit provisions with respect to a new employer group as provided by the Trust Agreements.

Section 5.   The Employer shall make remittances to the appropriate Fund within fifteen (15) calendar days after the close of the first payroll period ending on or after first day of each calendar month.

Section 6.   With each report to the appropriate Fund, the employer shall give the name, Social Security numbers and starting dates of new, regular employees and termination dates of regular employees.

### BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY

Section 7.    Payments to the Fund shall be made on the pre-listed remittance forms sent by the Fund Office, or reproduced records which give all of the required information in a form acceptable to the Fund. Failure to submit the required information in a form acceptable to the Fund will be subject to the arbitration provisions of Article XVIII.

Section 8.    Pension fund payments shall be continued on eligible employees when said employees are on a medical leave of absence up to the periods provided for in Article XVI, Section 1, or beyond that period for special reasons agreed to by the Employer and the Union. Pension fund payments shall be continued on eligible employees when said employees are on a personal leave of absence up to a period of ninety (90) days, or beyond that period for special reason agreed to by the Employer and the Union. Beyond that time, the Pension Fund payment shall be made for and on behalf of the temporary, extra or substitute employee, but in no event shall contributions be made for both the eligible employee and the temporary, extra or substitute; provided, however, that any temporary employee who has been employed by the Employer for more than twelve (12) consecutive months shall have contributions made on his/her behalf.

## ARTICLE XIV - HEALTH AND WELFARE - PENSION DELINQUENCIES

Section 1.    The Employers recognize the necessity of making prompt Health and Welfare and Pension contributions to preserve the benefit standing of employees and ensure adequate funding of benefits. If an Employer remains delinquent in making payments to either the Welfare Fund or the appropriate Pension Trust for a period of 10 days after written notice of delinquency is given to the building and the Association, or refuses to produce payroll records in accordance with the payroll audit provisions of the Trustees' collection policy, the Union may strike the building to enforce such payments or production of records without regard to the no-strike clause in Article XVII or the grievance and arbitration procedure provided in Article XVIII. The delinquent Employer shall also be responsible for reimbursement to employees of wages lost because of any strike action taken by the Union under this Article.

Section 2.    If the Trustees do not receive full amount of the Employer's required Welfare Fund or Pension Trust contribution and the accompanying remittance form by the dates set forth in Article XII, Section 6 and Article XIII, Section 5 with respect to which contributions are due, the Employer will be required to pay, in addition to the amount of such contribution, interest and liquidated damages at the rates specified in the Trust Agreements on the unpaid amount, as well as accountants' and attorneys' fees and court costs, if any, incurred in effecting collection. The Employer acknowledges receipt of the Trust Agreements and represents to the Union and the Funds that it has read the interest and liquidated damages provisions and that the liquidated damages provision is a reasonable approximation of damages to the Funds which are difficult to ascertain. Employer further acknowledges that any right of the Trustees to waive interest or liquidated damages pursuant to the collection policy described in Section 3, below, shall not modify the Employer's agreement that the maximum liquidated damages specified in the Trust are reasonable approximation of actual damages under all circumstances where the Employer is delinquent.

Section 3.    Employer acknowledges that the Trustees of the Funds have the Fiduciary obligation under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") to ensure prompt collection of Employer contributions and the resolution of delinquencies through the use of payroll audits and other enforcement procedures. Accordingly, the Employer

13

hereby irrevocably designates as its representatives the Trustees named Employer Trustees of the Funds and their successors in connection with the adoption, amendment and administration of a collection policy setting forth payroll audit and collection procedures in accordance with the terms and conditions of ERISA prohibited transaction class exemption 76-1. Employer hereby consents to and agrees to be bound by the provisions of such collection policy, as amended, as though fully set forth in this Agreement.

## ARTICLE XV - SENIORITY

Section 1.    The term "seniority" shall mean the length of service of a regular employee in a building; provided that new employees shall be considered probationary employees for the first 90 calendar days of employment. During their probationary period, employees shall have no seniority and may be laid off or terminated at the sole discretion of the Employer and such action shall not be subject to the grievance procedure of this Agreement. An employee's seniority rights shall not be affected by a change of ownership or management of the building so long as said employee remains in the employ of the new owners or managers who shall have the right to establish and apply reasonable employment criteria and decline to employ any individual who fails to meet such criteria. The Employer shall post a seniority list in each building in a place accessible to all employees. Said list shall contain the names of all employees who have seniority as provided for herein and their respective seniority date and shall be updated quarterly including a date prior to vacation scheduling. A copy of the seniority list shall be made available to the Union upon request.

Nothing contained in this Agreement shall be deemed to restrict the Employer's right to temporarily or permanently assign employees to or among other buildings covered by collective bargaining agreements with the Union to which the same Employer is signatory; provided, that temporary assignments shall have no effect upon the employee's seniority, and employees shall, during the period of such temporary assignments, continue to retain and accrue seniority and benefit eligibility as if they had not been temporarily assigned; provided further, that permanently reassigned employees shall, upon reassignment, be credited with all accumulated seniority and benefit eligibility from their previously assigned building at their new building location and shall in addition continue to retain and accrue seniority and benefit eligibility at their new building location as if they had started work at said location. Seniority shall not be broken except by discharge for cause, resignation, or layoff for more than one year.

Section 2.    In effectuating promotions, layoffs and/or recalls and shift assignments, the Employer shall give consideration to employee's seniority, knowledge, training, ability, skill and efficiency to satisfactorily perform the work available. Employees who have completed their probationary periods and who are interested in filling different positions must identify to the Employer, in writing, those positions for which they wish to be considered in the event a vacancy occurs. For any vacancy not filled pursuant to the foregoing procedure, the Employer shall give consideration to qualified replacement employees who are then working in the Employer's building before hiring new employees to fill the vacancy.

Section 3.    The Employer shall give not less than one (1) week's notice of recall in writing to the employee's last known address. A failure to report for work prior to expiration of such notice period, shall result in the loss of all seniority rights under this Agreement. No notice

*BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY*

of recall need to be given in cases where the Employer and the Union agree to waive notice because it is apparent to them the particular employee will not return.

Section 4.    Selection and preference as to the time of taking vacations shall be granted to employees on the basis of seniority, except that a building may depart from seniority in vacation scheduling where it is required in order to maintain normal operations of the building, in which event the Union shall be notified as soon as possible of the departure from seniority.

## ARTICLE XVI - LEAVES OF ABSENCE

Section 1.    The Employer shall grant a leave of absence in writing because of illness or disability, substantiated by medical approval, upon the following schedule: under one year seniority, no leave; one year to three years' seniority, six months' leave; three years to five years' seniority, nine months' leave; after five years' seniority, one year leave. Upon return from such leaves, the employee shall return to the assignment previously being performed by the employee or in the event such assignment no longer exists, a substantially comparable position.

Section 2.    The Employer shall not unreasonably withhold the granting of a personal leave of absence submitted in writing for reasons other than illness or disability of up to fourteen (14) days after two (2) years and up to ninety (90) days after five (5) years of seniority. The Employer shall not be required to grant a personal leave of absence until after twenty-one (21) months have expired since an employee's previous personal leave of absence. Failure to return to work without justifiable cause following a personal leave of absence will be grounds for termination.

Section 3.    An employee selected to represent the Union at conventions, conferences, collective bargaining, grievance and arbitration proceedings or for other Union business shall be granted a leave of absence for the period required to fully carry out said business.

Section 4.    During all such leaves of absence provided for in this Article, seniority shall continue to accumulate and accrue. By agreement between the Employer and the Union, employment of an employee on such leave of absence may be terminated.

Section 5.    The provisions of the Family Medical Leave Act, where more favorable, shall supersede the provisions of this Article.

## ARTICLE XVII - STRIKES, LOCKOUTS, PICKETING

Section 1.    During the term of this Agreement, there shall be no strikes, lockouts, picketing, work stoppages, slowdowns, or sympathy strikes, nor shall there be any attempted interference with or disruption of the business of the Employer and/or its relationships with or the business of its tenants or their contractors, including boycotts, public appeals or demonstrations of any kind, handbilling or leafleting, at or near the employer's premises or elsewhere.

Section 2.    No action or suit of any kind or description shall lie by the Association or any member thereof against the Union, or any officers, representative or agent thereof, because of any action in violation of Section 1 of this Article so long as:

*BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY*

(a) The Union has not authorized or instigated the action; and,

(b) The Union promptly denounces such and makes an earnest effort to terminate same.

Section 3.     It is understood between the parties that security employees, because of their special responsibilities and duties, shall at no time participate in strikes, slowdowns or withdrawal of services, nor shall they observe picket lines in any form; provided only that, in the event of a strike by others, they shall not be required to assume non-security type duties normally performed by striking employees.

Further, security employees shall not be subject to penalty or punishment by the Union for performances of assigned duties at any time. These duties are recognized as including the apprehension, identification and reporting of and giving evidence against any persons who perform or conduct themselves in violation of work rules or applicable laws while on the Employer's premises. Violation of the provisions of this Article will subject security employees to disciplinary action up to and including discharge. Such disciplinary action shall be subject to the grievance and arbitration procedure of this Agreement.

## ARTICLE XVIII - GRIEVANCE PROCEDURE AND ARBITRATION

Section 1.     The procedure for handling a grievance pertaining to any difference or dispute which may arise under this Agreement shall be as follows:

### STEP I

The aggrieved employee, accompanied by the steward or Union Grievance Representative if the employee desires, shall consult with the employee's foreman or immediate supervisor. If a group of employees are involved in the grievance, the steward or Union Grievance Representative shall represent the employees. In any event, since it is in the best interest of all concerned that a grievance be promptly and expeditiously resolved, an aggrieved employee and/or the steward of the employee or employees involved, shall present such grievance as soon as reasonably possible and in any event, within ten (10) calendar days following the event which gives rise to its occurrence, or after such employee and/or the steward of the employee or employees involved first acquired knowledge concerning such event.

### STEP II

If the matter is not settled in the first step and the Union wishes to further pursue it, the grievance shall be reduced to writing and presented to the building manager and, where applicable, the contractor within thirty (30) calendar days following the event which gave rise to its occurrence or after the employee or employees involved first acquired knowledge concerning such event. The foreman or immediate supervisor, together with the aggrieved employee, the steward or Union Grievance Representative shall discuss the grievance with the building manager and the contractor.   The building manager or contractor shall give his or her written answer within fifteen (15) calendar days after receipt of the written grievance.

*BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY*

### STEP III

If the matter is not settled in the second step and the Union wishes to further pursue it, the Union shall, within fifteen (15) calendar days following its receipt of the building manager's or contractor's written answer, present the Association with a written request that the grievance be referred to a Labor-Management Committee comprised of two members of the Association's Labor Relations Committee and two representatives of the Union, which shall meet once each month at an established time and place. The Labor-Management Committee shall meet with the grievant (if requested by the Union), the building manager and, where applicable, the contractor and endeavor to resolve the matter in a way acceptable to the Association and the Union.

Section 2.     If the matter is not resolved in the third step and the Union wishes to further pursue it, the Union shall, within thirty (30) calendar days after the grievance was advanced to the third step, serve a written demand for arbitration upon the Employer or, where applicable, the contractor. The grievance shall thereafter be submitted to an arbitrator who shall be selected by mutual agreement of the Employer or, where applicable, the contractor and the Union from the following panel (which may be added to hereafter upon agreement of the parties):

> EDWIN BENN
> LISA SALKOVITZ KOHN
> SINCLAIR KOSSOFF
> ARTHUR MALINOWSKI
> ROBERT McALLISTER
> ROBERT PERKOVICH

If the parties are unable to agree upon any one of the foregoing arbitrators, the parties shall alternatively, strike one name from said list, and the last remaining name shall be the arbitrator selected to hear and decide the grievance. The compensation of the said arbitrator shall be paid one-half by the Employer or, where applicable, the contractor and one-half by the Union.

Section 3.     The award or decision of the arbitrator shall be final and binding upon the Employer and employee(s) involved, and the Union. The arbitrator shall not have the authority to add to, subtract from or alter the provisions of this Agreement.

Section 4.     If any Employer who is a party to this Agreement refuses to abide by an arbitration award made under this Article or refuses to abide by a written decision signed by representatives of the Employer and the Union which resolves any difference or dispute arising under this Agreement, the Union shall be relieved from the obligation of Article XVII as to such Employer.

Section 5.     Grievances which are not presented or appealed within the time limits set forth in Sections 1 and 2 shall be considered withdrawn and abandoned. If there is not a timely answer to a grievance by the building manager or contractor in the second step of the grievance procedure, the Union may demand that the grievance be automatically advanced to the third step.

*BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY*

## ARTICLE XIX - UNION ACTIVITIES IN BUILDINGS

Duly accredited representatives of the Union may enter the building of the Employer during the working hours to observe working conditions and to confer with the employees under circumstances that are not disruptive to working schedules. When a Union Business Representative enters a building, he or she will abide by all building security rules and contact the supervisor. In the event the supervisor cannot be contacted and twenty (20) minutes have elapsed, the representative of the Union may proceed to confer with an employee or employees. Duly accredited representatives of the Union shall have reasonable access to timecards or sign in sheets for the current day applicable to employees covered by this Agreement. The Employer shall permit the posting of Union bulletins in designated areas and shall permit Union stewards reasonable freedom to perform their duties during working hours, so long as it does not interfere with the performance of their security duties.

## ARTICLE XX - ELECTION TO ADOPT OR WITHDRAW FROM CONTRACT

Section 1.    Regular members of the Association, other than those listed in Schedule "A" who, at the effective date or during the term hereof, elect to adopt this Agreement, shall notify the Association to that effect. It is understood that any Employer may be a party to this Agreement with respect to the building or buildings designated by said Employer without obligation on the part of said Employer as to any other building owned, managed or controlled by it. Notice of election to adopt this Agreement shall be made by members of the Association in writing and the Association in turn shall notify the Union. Such notice shall state the name and location of the building to which the election applies and the name of the Employer. In like manner, the Association shall notify the Union when any building ceases to be represented in the regular membership of the Association.

Withdrawal from membership in the Association does not release the building from its obligations under this Agreement. If any building, which is paying its employees wages higher than those provided in this Agreement, desires to adopt same, it shall not reduce such higher wages during the life of this Agreement.

Section 2.    The Employer shall promptly notify the union of any change in the management agent of the building and the effective date of any such change.

## ARTICLE XXI - JURY SERVICE

The Employer shall compensate the employee for the difference between the pay which such employee would normally receive, excluding overtime, and the amount received for jury service up to a period of four (4) weeks. It shall be the employee's responsibility to present evidence to the Employer of his or her notice of jury duty and the length of time he or she served on such jury prior to being compensated.

## ARTICLE XXII - MISCELLANEOUS PROVISIONS

Section 1.    If any employer shall list job vacancies with an employment agency, said employer shall pay all the cost and charges of such agency.

*BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY*

**Section 2.** If any law now existing or hereafter enacted, or any proclamation, regulation or edict of any national or state official or agency shall invalidate any portion of this Agreement, the entire Agreement shall not thereby be invalidated and either party hereto, upon request, may reopen for negotiation the invalidated portion. In the event agreement thereon cannot be reached within 30 days, either party may submit the matter to arbitration as herein provided.

**Section 3.** This Agreement shall be construed as divisible as to each building and failure of any building to abide by the terms hereof shall not operate to terminate this Agreement as to any other building. No breach of this Agreement by an Employer shall operate to subject the Association or any other Employer to any legal liability.

**Section 4.** Neither the Employer nor the Union will discriminate against applicants or employees with regard to employment, tenure or any other term or condition of employment in violation of any applicable law. Employees and management representatives will be treated with respect and dignity by all parties to this Agreement.

**Section 5.** Nothing contained in this Agreement shall be construed to prevent or restrict supervisors, managerial personnel, or key employees having significant technical, administrative or human relations skills and responsibilities, from performing bargaining unit work in the event of any emergency, during training periods, or because of significant tenant and/or public relations requirements.

**Section 6.** Employers shall not require employees to reimburse them for property loss or damage without legitimate reason and without first notifying the Union.

## ARTICLE XXIII - SUBCONTRACTING

The Employer may subcontract all or any part of the work being performed by employees in the bargaining unit covered by this Agreement provided that security positions subject to such subcontract are first offered by the subcontractor to the employees currently employed by the Employer, and provided, further, that the subcontractor shall have the right to establish and apply reasonable employment criteria and decline to employ any individual who fails to meet such criteria. In the event the Employer replaces the subcontractor with a different subcontractor, security positions subject to such subcontract shall first be offered by the subcontractor to those employees presently working in security positions in the building, provided that the replacement contractor shall have the right to establish and apply reasonable employment criteria and to decline to employ any individual who either fails to meet such reasonable employment criteria or who is unacceptable to the Employer. In the event there are to be fewer security positions than there are current employees who are acceptable to both the subcontractor and the Employer and willing to accept such offers, seniority shall govern.

Should the Employer elect to terminate subcontracting, in filling security position vacancies created thereby the Employer shall be obliged to give consideration only to those employees presently working in security positions in the building who were employed by the Employer when the subcontracting began, provided that the Employer shall have the right to establish and apply reasonable employment criteria and to decline to employ any individual who fails to meet such employment criteria.

*BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY*

In the event that the Employer subcontracts to a security contractor which is a party to a collective bargaining agreement with the Union, the terms and conditions of this Agreement shall be the only terms and conditions applicable to said contractor and its employees working in the Employer's building notwithstanding the particular terms and conditions contained in any collective bargaining agreement between the Union and such security contractor. Grievances alleging that said contractor is not faithfully observing the terms of this Agreement shall be processed in accordance with the grievance and arbitration procedures set forth in Article XVIII. If it is determined by the Committee in the third step or in subsequent arbitration proceedings between the Union and the contractor that the grievance is well founded and the contractor thereafter refuses to implement the remedy imposed, the contract between the contractor and the Employer shall be terminated within sixty (60) calendar days after written notice by the Union to the Employer.

## ARTICLE XXIV - "MOST FAVORED EMPLOYER" CLAUSE

If, during the term of this Agreement, the Union enters into any agreement with another employer or group of employers employing security employees working in commercial office buildings in the Chicago central area which provides for wage rates or any other terms or conditions of employment (including, but not limited to, economic provisions, hours of work, and limitations of any kind on the rights of the employer) more favorable to the employer (excluding building tenants) of such employees than those set forth in this Agreement, the Association shall have the right, immediately or at any time thereafter, to elect to adopt any or all of such more favorable wage rates and terms or conditions of employment on behalf of all Employers signatory to this Agreement by giving written notice to the Union of such election. The Union agrees to file with the Association a copy of each collective bargaining agreement it enters into with an employer or group of employers employing security employees working in commercial office buildings in the Chicago central area within thirty (30) days following the execution of said agreements. For purposes of this provision, the "Chicago central area" is defined as the area bounded by Roosevelt Road, Lake Michigan, North Avenue and Racine Avenue.

## ARTICLE XXV - EDUCATION AND TRAINING

Section 1.    Formation of Joint Security Officer Training Fund.    The Union and the Association shall establish a joint labor-management Security Officer Training Fund (the "Training Fund") in order to provide continuing education and professional training to Employees covered by this Agreement. The Training Fund shall consist of three (3) trustees appointed by the Union and three (3) trustees appointed by the Association. The Training Fund shall be maintained and operated in accordance with Section 301(c) of the National Labor Relations Act.

Section 2.    Contribution to Security Officer Training Fund.    During the term of this Agreement, the Employer shall contribute five cents ($.05) to the Training Fund for each pay hour of work performed by each employee covered by this Agreement.

Section 3.    Programs Provided by Security Officer Training Fund.    It is the intent of the parties that the programs which the Training Fund shall make available to employees covered by this Agreement shall include basic skills training, skills reinforcement training, and advanced training. The form and content of these programs shall be developed and established by the

*BOMA/CHICAGO - 2007 AGREEMENT - LOCAL 1 SECURITY*

Trustees.  In this regard, it is the intent of the parties that the Trustees engage qualified security professionals and specialists in the delivery of adult education and training to create detailed curricula for all aspects of the training programs.

Section 4.   Attendance at Training Fund Programs.   Employees who are directed, in writing, by their Employer to attend training programs shall be compensated by their Employer for their time spent therein in accordance with Article X, Section 3 of this Agreement.

## ARTICLE XXVI - DURATION

This Agreement becomes effective April 30, 2007 and shall remain in full force and effect through April 27, 2008.

Executed at Chicago, Illinois this *27* day of *July*, 2007.

BUILDING OWNERS AND MANAGERS ASSOCIATION OF CHICAGO

By:_____
Ronald Vukas, Executive Vice President


SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1

By:_____
Thomas Balanoff, President

## SCHEDULE A

Section 1. The foregoing Agreement in its entirety shall apply to the following member buildings' security employees:

| | |
|---|---|
| 10 SOUTH LASALLE STREET BUILDING | 10 S. LaSalle St. |
| 10 SOUTH RIVERSIDE PLAZA | 10 S. Riverside Plaza |
| 100 NORTH LASALLE BUILDING | 100 N. LaSalle St. |
| 100 NORTH RIVERSIDE PLAZA | 100 N. Riverside Plaza |
| 100 WEST MONROE | 100 W. Monroe St. |
| 101 EAST ERIE STREET | 101 E. Erie St. |
| 11 EAST ADAMS | 11 E. Adams St. |
| 111 SOUTH WACKER | 111 S. Wacker Dr. |
| 111 WEST JACKSON BOULEVARD BUILDING | 111 W. Jackson Blvd. |
| 122 SOUTH MICHIGAN | 122 S. Michigan Ave. |
| 123 NORTH WACKER | 123 N. Wacker Dr. |
| 125 SOUTH WACKER DRIVE | 125 S. Wacker Dr. |
| 131 SOUTH DEARBORN | 131 S. Dearborn St. |
| 142 EAST ONTARIO BUILDING | 142 E. Ontario St. |
| 150 NORTH MICHIGAN AVENUE | 150 N. Michigan Ave. |
| 150 NORTH WACKER DRIVE | 150 N. Wacker Dr. |
| 161 NORTH CLARK | 161 N. Clark St. |
| 175 WEST JACKSON BOULEVARD | 175 W. Jackson Blvd. |
| 180 NORTH LASALLE | 180 N. LaSalle St. |
| 180 NORTH MICHIGAN AVENUE BUILDING | 180 N. Michigan Ave. |
| 181 WEST MADISON | 181 West Madison St. |
| 20 NORTH CLARK | 20 N. Clark St. |
| 20 NORTH MICHIGAN | 20 N. Michigan Ave. |
| 200 SOUTH MICHIGAN AVENUE | 200 S. Michigan Ave. |
| 200 WEST JACKSON | 200 W. Jackson Blvd. |
| 200 WEST MADISON | 200 W. Madison St. |
| 222 NORTH LASALLE STREET | 222 N. LaSalle St. |
| 222 SOUTH RIVERSIDE PLAZA | 222 South Riverside Plaza |
| 222 WEST ADAMS STREET | 222 W. Adams St. |
| 225 WEST WACKER DRIVE | 225 W. Wacker Dr. |
| 230 WEST MONROE | 230 W. Monroe St. |
| 231 SOUTH LASALLE | 231 S. LaSalle St. |
| 30 SOUTH WACKER | 30 S. Wacker Dr. |
| 30 WEST MONROE | 30 W. Monroe St. |
| 300 SOUTH RIVERSIDE PLAZA | 300 S. Riverside Plaza |
| 300 SOUTH WACKER | 300 S. Wacker Dr. |
| 303 EAST WACKER | 303 E. Wacker Dr. |
| 311 SOUTH WACKER DRIVE | 311 S. Wacker Dr. |
| 321 NORTH CLARK STREET | 321 N. Clark St. |
| 33 NORTH LASALLE STREET BUILDING | 33 N. LaSalle St. |
| 330 NORTH WABASH AVENUE | 330 N. Wabash Ave. |
| 332 SOUTH MICHIGAN | 332 S. Michigan Ave. |
| 333 WEST WACKER | 333 W. Wacker Dr. |
| 35 WEST WACKER DRIVE | 35 W. Wacker Dr. |
| 360 NORTH MICHIGAN AVENUE | 360 N. Michigan Ave. |
| 401 NORTH MICHIGAN AVENUE | 401 N. Michigan Ave. |

## LETTER OF AGREEMENT BETWEEN
## BUILDING OWNERS AND MANAGERS ASSOCIATION OF CHICAGO
## AND
## SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1 SECURITY EMPLOYEES

This Letter of Agreement is made and entered into this 27 day of *July*, 2007, by and between BUILDING OWNERS AND MANAGERS ASSOCIATION OF CHICAGO ("BOMA/Chicago") and SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1 ("Local 1").

BOMA/Chicago and Local 1 are parties to a collective bargaining agreement effective April 30, 2007 through April 27, 2008, covering security employees employed by certain member buildings of BOMA/Chicago (the "Security Agreement"). By this Letter of Agreement, BOMA/Chicago and Local 1 acknowledge their understandings and agreements, reached during the course of negotiations, regarding certain of the employees covered by said Agreement, as follows:

Those employees hired by an Employer prior to January 1, 1998 who, immediately prior to that date, were represented by Local 1, SEIU and covered by the Elevator Agreement between BOMA/Chicago and Local 25, SEIU dated April 11, 1994 (the "Elevator Agreement") shall be subject to the following:

If, immediately prior to the effective date of the April 20, 1998 – April 22, 2001 collective bargaining agreement between BOMA/Chicago and Local 1's predecessor, Local 73, General Service Employees Union, said employees were receiving shift premiums pursuant to Article IV, Section 3 of the Elevator Agreement, and if, immediately prior to the effective date of the Security Agreement they were still receiving such premiums, they shall continue to receive such premiums so long as they continue to work schedules which would have entitled them to receive such premiums under the Elevator Agreement.

BUILDING, OWNERS AND MANAGERS ASSOCIATION OF CHICAGO

By: _____
      Ronald Vukas, Executive Vice President

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1

By: _____
      Thomas Balanoff, President

## LETTER OF AGREEMENT BETWEEN
### BUILDING OWNERS AND MANAGERS ASSOCIATION OF CHICAGO
### AND
### SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1 SECURITY EMPLOYEES

This Letter of Agreement is made and entered into this _27_ day of _July_ _____, 2007, by and between BUILDING OWNERS AND MANAGERS ASSOCIATION OF CHICAGO ("BOMA/Chicago") and SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1 ("Local 1).

BOMA/Chicago and Local 1 are parties to a collective bargaining agreement effective April 30, 2007 through April 27, 2008, covering security employees employed by certain member buildings of BOMA/Chicago (the "Security Agreement"). By this Letter of Agreement, BOMA/Chicago and Local 1 acknowledge their understandings and agreements, reached during the course of negotiations, regarding certain of the employees covered by said Agreement, as follows:

The provisions of Article IV, Section 1 of the Security Agreement notwithstanding, effective April 30, 2007, employees employed by the Employer on October 15, 1984 shall receive an increase in pay of not less than twenty-five cents ($0.25) per hour or a minimum wage rate of not less than $13.50 per hour, whichever is greater.

The Employer agrees that it will not attempt to effectuate wage cost reductions by discharging employees covered by this Letter of Agreement in order to hire replacements covered by Article IV, Section 1 of the Security Agreement.

BUILDING, OWNERS AND MANAGERS ASSOCIATION OF CHICAGO

By: _Ronald Vukas_

Ronald Vukas, Executive Vice President

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1

By: _____

Thomas Balanoff, President