**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BARBARA COE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 3654 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1, and AMERICAN PREMIER SECURITY, INC., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Barbara Coe ("Coe") brought suit against her employer, defendant American Premier Security, Inc. ("American Premier"), and the Service Employees International Union, Local 1 (the "Union") (collectively, "defendants"), alleging that American Premier breached its collective bargaining agreement with the Union in violation of § 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185, and that the Union breached its duty of fair representation in failing to assist her in resolving her grievance against American Premier. The court previously dismissed Coe's amended complaint, which she filed *pro se*. In dismissing her complaint, the court also appointed Coe counsel (Doc. 32), through whom she filed her five-count Second Amended Complaint (the "Complaint") (Doc. 36). American Premier and the Union separately have moved to dismiss the Complaint (Docs. 38, 41.)

### I. BACKGROUND

Coe, a sixty-two year-old woman, was employed as a security guard by American Premier, which provides security services to buildings in the Chicago Area, at Chase Tower from 2003 until December 31, 2007. (Doc. 36 ¶¶ 6, 10-11.) Throughout that

period, she was a dues-paying Union member. (*Id.* ¶¶ 8-9.) In 2007, Coe took a four-month approved leave of absence from her job after the death of her husband. (*Id.* ¶ 12.) When she returned to work in July 2007, she had a new supervisor named Chaunston Dozier; Dozier issued Coe two disciplinary reports, in September and November 2007, for failing to help a Chase employee and reading a newspaper on the job, respectively. (*Id.* ¶¶ 14, 16.) Prior to 2007, Coe does not remember being the subject of any complaints or discipline regarding her conduct. (*Id.* ¶ 15.) Nevertheless, on December 31, 2007, Dozier told Coe that due to the two disciplinary reports, Coe could not continue to work at Chase Tower. (*Id.* ¶ 17.) Dozier did not tell Coe that she was fired, just that she could not continue work at Chase Tower. (Doc. 36 ¶ 18.) She was never told to report to another American Premier site, nor was she formally terminated. (*Id.* ¶¶ 20-21.)

On January 2, 2008, Coe filed a grievance with the Union. (*Id.* ¶¶ 23, 38.) She repeatedly called the Union, which did nothing in response. (*Id.* ¶ 24.) She also contacted American Premier, which also did not return her calls. (*Id.* ¶ 35.) The Union took no action on Coe's grievance, leading Coe to file the instant suit.

## II. LEGAL STANDARD

Rule 12(b)(6) allows a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion the court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (internal citation omitted). Legal conclusions, however, are not entitled to any assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain

2

statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). However, the allegations must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be sufficient to "state a claim to relief that is plausible on its face[.]" *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

### III. ANALYSIS

**A. Section 301 and Duty of Fair Representation (Count I)**

In Count I, Coe brings a claim against American Premier for its alleged violation of § 301 of the LMRA and against the Union for its breach of its fair duty of representation. The Supreme Court has long recognized "hybrid" causes of action such as this. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-65 (1983). In *DelCostello*, the Court reaffirmed that an individual may sue his employer for breach of a collective bargaining agreement, provided, however, that he exhausts administrative remedies. *Id.* at 163. Judicial review of any administrative determination is very limited, except when "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Id.* at 164. In such cases, the employee need not exhaust administrative remedies, but instead "may bring suit against both the employer and the

union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id.* (collecting cases). The Court recognized that the employee's breach of collective bargaining agreement claim against her employer and her breach of duty of fair representation claim against the union "'are inextricably interdependent,'" *id.* (citation omitted), because, to prevail against either defendant, the employee must demonstrate both claims, *id.* at 165; *Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 864 (7th Cir. 2009) (recognizing that employee "must establish both parts of his hybrid claim in order to prevail").

Defendants argue that Coe's allegations do not state a claim for either breach of collective bargaining agreement or breach of duty of fair representation. The court analyzes each claim in turn.

    1.    <u>Breach of Collective Bargaining Agreement</u>

Defendants first argue that Coe has failed to allege sufficiently that American Premier breached the collective bargaining agreement (the "CBA") between it and the Union. Coe contends that American Premier breached the CBA by failing to consult with Coe as the CBA required it to do once she called American Premier with her grievance. (Doc. 47 at 6.) American Premier replies that the CBA places the onus on Coe and the Union to engage in such consultation with the employer, so that any failure to consult regarding Coe's grievance is attributable to Coe and the Union, not to American Premier.

The disputed part of the CBA provides that, when an employee has a grievance, the grievance procedure proceeds as follows:

> STEP 1
>
> The aggrieved employee, accompanied by the steward or Union Grievance Representative if the employee desires, shall consult with the

> employee's foreman or immediate supervisor. If a group of employees are involved in the grievance, the steward or Union Grievance Representative shall represent the employees. In any event, since it is in the best interest of all concerned that a grievance be promptly and expeditiously resolved, an aggrieved employee and/or the steward of the employee or employees involved, shall present such grievance as soon as reasonably possible and in any event, within ten (10) calendar days following the event which gives rise to its occurrence, or after such employee and/or the steward of the employee or employees involved first acquired knowledge concerning such event.

(Doc. 36 Ex. A at 16.)

Coe alleges that she called American Premier in January 2008, but that American Premier ignored her call. She does not allege specifically that she contacted Dozier, who, according to the allegations, was her "immediate supervisor . . . ." (*Id.*) Nor does she allege specifically that she contacted American Premier "within ten (10) calendar days following the event" giving rise to Coe's grievance (*id.*), instead alleging that she contacted American Premier "[i]n January 2008." (Doc. 36 ¶ 35.)

Still, notice pleading standards do not require particular names and dates, *see Hollander v. Brown* 457 F.3d 688, 691 n.1 (7th Cir. 2006), and Coe has not pled herself out of court, for example, by alleging that she contacted someone who was not her supervisor, or that she contacted such a person after the ten-day period provided under Step 1. Turning to American Premier's argument that the burden was on Coe or the Union to contact it with a grievance, Coe clearly alleges that she attempted to consult with American Premier, but that no one returned her call. American Premier could not frustrate Coe's efforts to consult with it by refusing to return her telephone call. Coe states a plausible claim that American Premier failed to consult with Coe as required by the CBA.

Coe also has stated a cause of action for breach of the CBA based on American Premier's alleged age discrimination. The CBA states, "Neither the Employer nor the Union will discriminate against applicants or employees with regard to employment, tenure, or any other term or condition of employment in violation of any applicable law." (Doc. 36 Ex. A at 19.) Coe alleges that American Premier removed two other employees, both between twenty and thirty years of age, from the Chase Tower site but, after consultation with the Union, placed those employees elsewhere. (Doc. 36 ¶ 27.) American Premier allegedly refused to place those employees at Chase Tower, where they wanted to continue working. (*Id.*) While American Premier's refusal to keep those employees at Chase Tower is consistent with its treatment of Coe, the employer's alleged refusal to consult with Coe regarding her placement is inconsistent, at least based on the allegations, with its treatment of the two other employees.

The Age Discrimination in Employment Act provides, "It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2350 (2009). Coe's allegation that she was treated differently from two younger American Premier employees suggests that American Premier discriminated against her with respect to the "terms, conditions, [and] privileges of employment, because of [her] age."

Last, American Premier argues that Coe fails to allege that the two younger employees were similarly situated to her. This argument concerns the method of proving age discrimination claims–that is, by the indirect method, *see Faas v. Sears, Roebuck &*

*Co.*, 532 F.3d 633, 641 (7th Cir. 2008)–and not her pleading obligations. Even if Coe were required to plead that her fellow employees were similarly situated to her, her allegation that they were "removed from their Union security posts in the Chase Tower" would satisfy her obligation at this stage. (Doc. 36 ¶ 27.)

Coe has stated a cause of action for breach of the CBA.

2. <u>Breach of Duty of Fair Representation</u>

The next question is whether Coe has alleged a cause of action against the Union for the breach of its duty of fair representation. Coe alleges that she attempted to contact the Union on January 2, 2008, and several more times thereafter, but that the Union never returned her calls. (*Id* ¶¶ 23-24.) As the Union notes, it breaches its duty of fair representation only when its actions are arbitrary, discriminatory, or in bad faith. *See Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998). In other words, it is not liable for mere negligence. *Neal v. Newspapers Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003). Here, Coe alleges more than negligence. According to her Complaint, the Union's decision not to represent her was motivated by discriminatory animus due to her age (Doc. 36 ¶ 31), and was arbitrary and in bad faith (*id.* ¶¶ 32-33), as evidenced by the Union's inexplicable failure to respond to Coe's repeated calls regarding her grievance. While the Union characterizes Coe's allegations as "conclusory" (Doc. 42 at 4), Coe's allegations that she repeatedly contacted the Union but that the Union declined to return her calls set forth a plausible claim that it acted arbitrarily in breach of the duty of fair representation. Her allegation that the Union more zealously represented other, younger American Premier employees who had been disciplined states a plausible claim that the

Union acted discriminatorily and in bad faith. Defendants' motion to dismiss Count I is denied.

**B.     Breach of Collective Bargaining Agreement (Count II)**

In Count II, Coe brings a claim against American Premier and the Union for their breach of the CBA's grievance procedure. Coe's Count II is based on the same breach of the CBA that, in part, supports her Count I: American Premier's and the Union's failure to engage in Step 1 of the grievance procedure mandated under the CBA. Defendants argue that Coe cannot sue either the Union or American Premier for breach of the CBA because she is not a party to the CBA.

As Coe indicates, this argument has been rejected by the Seventh Circuit. *See Lewis v. Local Union No. 100*, 750 F.2d 1368, 1374 (7th Cir. 1984). In *Lewis*, the court noted that the Supreme Court "held that notwithstanding the fact that an employee was not a signatory to the collective bargaining agreement, he could sue his employer under section 301 for breach of that agreement," *id.* at 1373 (citing *Smith v. Evening News*, 371 U.S. 195, 83 S. Ct. 267 (1962)), and that the Court also held that an employee could sue his union under § 301, *id.* (citing *Humphrey v. Moore*, 375 U.S. 195, 84 S. Ct. 363 (1964)).

Based on this precedent, the Seventh Circuit found that "there can be little doubt that an employee can maintain an action under section 301(a) against the union for breach of the labor contract, at least, where, as here, the employee has also alleged a breach of the duty of fair representation," and provided that the allegedly breached promise is one "'intended to confer a benefit upon'" the employee. *Id.* at 1374 (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*, 403 U.S. 274,

298-99, 91 S. Ct. 1909 (1971)); *Schultz v. Owens-Ill., Inc.*, 560 F.2d 849, 855 (7th Cir. 1977); *Adamszewski v. Local Lodge 1487*, 496 F.2d 777, 786 (7th Cir. 1974). Here, Coe has alleged a § 301 violation against American Premier, and a cause of action for breach of the Union's duty of fair representation.

The remaining question is whether the provision of the CBA invoked by Coe in Count II–the CBA's grievance procedure–is one intended to confer a benefit on employees. *Lewis*, 750 F.2d at 1374. The Union argues that the CBA's grievance procedure was intended to confer a benefit only upon the Union and American Premier, and not upon American Premier's employees. However, the legal authority that the Union cites does not support this argument. Furthermore, an examination of the CBA grievance procedure suggests that it was intended to benefit not just the Union and American Premier, but also employees. The grievance procedure specifically refers to the "aggrieved employee" and gives the employee the discretion whether to have a Union representative accompany her in her consultation with the employer representative. At this early stage, it appears that Step 1 of the grievance procedure was meant to confer a benefit on employees as well as the parties to the CBA.

Finally, American Premier argues, as it did with respect to Count I, that it is incapable of breaching Step 1 of the grievance procedure, which requires the employee and the Union to confer with American Premier. As noted above, American Premier's argument fails to address the factual scenario posed by Coe's Complaint. She allegedly attempted to consult with American Premier, but American Premier would not return her calls. As Coe points out, she could not consult with herself. If, as Coe alleges, she attempted to consult with American Premier and American Premier failed to return her

calls, American Premier may have breached the grievance procedure and, in turn, the collective bargaining agreement.

C.  **National Labor Relations Act (Count III)**

In Count III, Coe alleges that the Union's breach of its duty of fair representation constitutes an unfair labor practice in violation of § 8(b) of the National Labor Relations Act. The Union argues that such disputes are exclusively within the jurisdiction of the National Labor Relations Board (the "NLRB"). *Accord Lockridge*, 403 U.S. at 276; *see also N.L.R.B. v. State of Ill. Dept. of Employment Sec.*, 988 F.2d 735, 738 (7th Cir. 1993) ("[T]he NLRB has exclusive jurisdiction to remedy unfair labor practices by employers and unions."). In response, Coe acknowledges the NLRB's exclusive jurisdiction over disputes such as the one she raises in Count III, which she withdraws. The Union's motion is denied as moot with respect to Count III.

D.  **Unpaid Holiday Pay and Work Assignment (Count IV)**

In Count IV, Coe alleges that American Premier, by not employing her at any of its sites since she was removed from Chase Tower, owes her back pay, holiday pay, vacation pay, interest, and a reinstatement to a position at one of its sites. Coe alleges that she has not been discharged by American Premier because, had she been discharged, the CBA would have obligated American Premier to give Coe and the Union ten days notice prior to the effective date of the discharge, or to give Coe ten days pay. (Doc. 36 ¶ 54.) Coe alleges that she has received neither notice nor pay, and thus must not have been discharged. In turn, Coe alleges that the CBA obligated American Premier to pay her holiday, vacation and back pay, and that "American Premier had an implied

obligation to provide work to Plaintiff," such that it must assign her to a position. (*Id.* ¶ 57.)

American Premier raises three arguments in favor of dismissal. First, American Premier argues that Coe's Count IV fails because she brings it against only American Premier, and not the Union. However, the Supreme Court has recognized that, in a hybrid suit such as this, an "employee, may, if he chooses, sue one defendant and not the other . . . ." *DelCostello*, 462 U.S. at 165. The critical inquiry is not whether both the employer and the union are named as defendants, but rather whether the plaintiff states a claim against both the employer (for breach of the collective bargaining agreement) and the union (for the breach of the duty of fair representation). *Id.* ( "[T]he case [the employee] must prove is the same whether he sues one, the other, or both.").

Related to this inquiry, American Premier maintains that, according to Coe's Complaint, she failed to avail herself of the grievance process, and so cannot make out a claim against the Union. However, as previously explained, Coe alleges that her attempts to avail herself of the grievance process were fruitless because neither the Union nor American Premier would return her calls. In such cases, failure to exhaust such administrative remedies poses no bar to suit, and the employee can bring a claim against her union. *Id.* at 164; *Vaca v. Sipes*, 386 U.S. 171, 185-87, 87 S. Ct. 903 (1967).[1]

Third, American Premier argues that Coe has failed to allege that a CBA provision required American Premier to put Coe at a new location, and characterizes as

---

[1] In support of these two arguments, American Premier relies on *Evans v. U.S. Postal Service*, 219 Fed. Appx. 527, 529 (7th Cir. 2007). As an initial matter, this case is non-precedential. *See* Cir. R. 32.1(b). In any case, the *Evans* court's recognition that the employee "need not sue both the union and the employer," and that the employee can sue despite not exhausting the grievance process "if the employee believes that his union did not adequately press his rights during the grievance process," *id.* at 528, do not help American Premier's arguments.

11

"absurd[]" Coe's allegation that "American Premier has an implied obligation to provide work to Plaintiff." (Doc. 39 at 8.) American Premier cites no legal authority holding that there is no implied obligation to provide work to an employee, and, in response, Coe cites no legal authority recognizing such a right.[2]

Coe is correct that the CBA sets forth specific requirements for termination. (*Id.* at 4.) Given that she alleges that American Premier did not fulfill those requirements, the court cannot conclude that American Premier terminated her. If she was not terminated, she may have remained an employee, as she alleges. Coe is also correct that the CBA appears to grant employees paid vacation (Doc. 36 Ex. A at 7-8) and paid holidays (*id.* at 5-7). Because, based on her allegations, Coe was still an employee, she appears to have been entitled to the vacation pay and holiday pay that she requests.

Coe also requests placement at a specific job site and back pay. The parties' arguments on this point are underdeveloped; they fail to cite any relevant case law, or call the court's attention to relevant CBA provisions. Because discovery may shed more light on whether the parties to the CBA intended to confer on employees a right to work in the absence of discipline or discharge, the court declines to dismiss Count IV.

E.     **Constructive Discharge (Count V)**

Finally, in Count V, Coe alleges in the alternative that she has been constructively discharged without cause, in violation of the CBA. American Premier seeks dismissal for three reasons: Coe has sued only American Premier in Count V; Coe has not alleged

---

[2] The court's research reveals only one case in which a party argued that a collective bargaining agreement gave rise to an implied right to work. *See Teamsters Local 315 v. Union Oil Co. of Cal.*, 856 F.2d 1307, 1312 (9th Cir. 1988). In *Teamsters Local 315*, however, the court of appeals found that restrictive arbitration language in the collective bargaining agreement at issue prevented arbitration of implied rights, such as the asserted right to work. *Id.* Accordingly, the court did not answer the question of whether the collective bargaining agreement gave rise to an implied right to work.

adequately that filing a grievance would be futile; and Coe has failed to cite any language from the CBA that American Premier failed to provide work for her. The court has rejected the first two of these reasons with respect to Count IV, and does so again with respect to Count V. Coe has alleged that the Union acted arbitrarily, discriminatorily, and in bad faith in failing to act on Coe's calls. She does not need to name the Union as a defendant in each count, and she need not re-allege the reasons for futility in each count to put American Premier on notice of the claims against it. Finally, Coe alleges that American Premier never terminated her yet also never reassigned her to another post. While American Premier argues that this is insufficient to support a constructive discharge claim, it cites no legal authority in support of its argument. Absent a more developed argument from American Premier, the court declines to dismiss Count V.

## IV. CONCLUSION

American Premier's motion to dismiss is denied. The Union's motion to dismiss is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 19, 2010